UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TROY E BELCHER,<br><br>  Plaintiff,<br><br> v.<br><br>LEZLIE PICKETT, et al.,<br><br>  Defendants. | CASE NO. C11-5452-RBL-JRC<br><br>REPORT AND RECOMMENDATION<br><br>NOTED FOR: APRIL 6, 2012 |

This 42 U.S.C. §1983 civil rights action has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Magistrate Judges Rules MJR 1, MJR 3, and MJR 4. Defendants ask the Court to dismiss this action by summary judgment (ECF No. 22). Plaintiff has not responded. The Court recommends that the motion be granted because defendants show that all actions taken with regard to plaintiff's housing assignment were the result of treatment decisions and represent the professional judgment of the mental health staff. The decisions to restrict his telephone usage and access to religious services were also the result of the staff at the Special Commitment Center exercising their professional judgment regarding his treatment.

Thus, any alleged infringement on plaintiff's constitutional rights was justified. The named defendants cannot be held liable for the actions of other residents.

## FACTS

Plaintiff has not contradicted the facts that are set forth by defendants in their motion for summary judgment (ECF No. 22). Defendants set forth the facts as follows:

> Plaintiff Troy Belcher is a committed resident of the Special Commitment Center(SCC), a total confinement treatment facility for persons committed or detained as sexually violent predators FN1 pursuant to Wash. Rev. Code 71.09; ECF No. 4, at 2. The defendants are SCC staff members Dr. Lezlie Pickett, Clinical Director Dr. Holly Coryell, Medical Director Dr. Leslie Sziebert, and Cathi Harris, Chief of Residential and Security Operations.
>
> FN 1 "Sexually violent predator" means any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility. Wash. Rev. Code 71.09.020(18).
>
> At the time this lawsuit was filed, June 10, 2011, Mr. Belcher was living on the Alder North living unit at the SCC.FN 2 Declaration of Cathi D. Harris (Harris Decl.) ¶¶ 2, 7. Alder North is a unit designed to house residents with significant behavior problems. *Id*. at ¶ 2. Mr. Belcher's move to Alder North was made as a treatment decision because of his negative behaviors, including misuse of the telephone, abuse directed at staff, and threats and manipulation of staff and other residents. *Id*., Attachment B. SCC employs consequences as a therapeutic intervention to assist residents to engage in pro-social behaviors and to manage their sexually deviant and anti-social tendencies and behaviors. *Id*. at ¶ 3. On March 9, 2011, Mr. Belcher received a "current conditions," which is a document regarding therapeutic treatment interventions developed by treatment staff to direct residential staff on special conditions for a particular resident based on, among other things, behavioral issues. *Id*. at ¶ 4, Attachment C. SCC Policy 203, Telephone Access, dated July 22, 2010 (Exhibit 1) provides that staff may intervene and/or restrict a resident's phone access regarding personal calls if he or she abuses telephone privileges. *Id*. Mr. Belcher's current conditions on March 9, 2011, restricted his access to personal telephone calls. This restriction was a result of Mr. Belcher's aggressive behavior toward staff, and his inappropriate use of the telephone which included placing threatening and intimidating calls to his estranged wife, suspected telephone contact with a former victim, calls made to a female SCC staff person, and attempts to solicit phone sex from other call recipients. *Id*. While on telephone restriction, Mr. Belcher was allowed to contact his family during special circumstances. FN 3 *Id*.

FN 2 Mr. Belcher was relocated from the Alder North Unit to the Cedar West Unit on November 9, 2011.

FN 3 Mr. Belcher's behavior problems have resulted in numerous restrictions on the telephone, his last restriction was ended on November 28, 2011.

On March 10, 2011, Mr. Belcher was placed on unit restriction as a therapeutic intervention to numerous behavior management issues that included threatening and intimidating SCC staff and verbal aggression. *Id*. at ¶ 5, Attachment D. Mr. Belcher's behavior problems created safety and security issues for staff and residents, and he was therefore restricted to his unit. *Id*. Both the phone and unit restriction were evaluated on a regular basis to allow Mr. Belcher to demonstrate an ability to manage his behavior appropriately. He continued to fail to act appropriately, and therefore he remained subject to the restrictions of his current conditions. *Id*.

On June 7, 2011, Mr. Belcher and another resident on Alder North were involved in an altercation when Mr. Belcher attempted to grab a television remote control out of the other resident's hand. The other resident, who is mobility impaired, retaliated by hitting Mr. Belcher in the side with his cane. *Id*. at ¶ 7. Mr. Belcher sustained no physical injury from this incident. The other resident was placed in the Intensive Management Unit (IMU) and returned to Alder North the following day. *Id*. SCC staff referred the incident to law enforcement and the Pierce County Prosecutor's Office, who declined to press criminal charges. *Id*. Mr. Belcher and the other resident continue to reside on Alder North and staff has observed them getting along with no apparent ill will and no further assaultive incidents between them. *Id*.

On May 17, 2011, Mr. Belcher filed a grievance complaining that his visiting forms were not being processed. ECF No. 4, at 7. SCC residents have visiting lists that contain approved visitors. Harris Decl. ¶ 11. On August 8, 2010, Mr. Belcher removed multiple persons from his approved visiting list, and another individual was removed at Mr. Belcher's request on January 30, 2011. *Id*. Another individual who had submitted a visitor's application that was pending contacted SCC officials and requested that the application process be stopped. *Id*. SCC officials denied another individual's application because she resembled Mr. Belcher's victim range and profile, and because Mr. Belcher had used this individual in the past to pass threats and intimidating correspondence to Mr. Belcher's estranged wife. *Id*.

In June of 2011, another resident on Alder North acted out upon arrival by smearing his feces in his single-occupancy bedroom. *Id*. at ¶ 9. SCC staff informed [sic] the resident to clean up his room, and gave him two hours to do so. When the resident failed to comply, the security team removed the resident to the IMU and a cleaning crew was sent in to clean the resident's bedroom. *Id*.

(ECF No. 22, pages 1-4).

## STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c)(2). There is a genuine issue of fact for trial if the record, taken as a whole, could lead a rational trier of fact to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also T. W. Elec. Service Inc. v. Pacific Electrical Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987); Fed. R. Civ. P. 56(e)(2). The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1985); Anderson, 477 U.S. at 254.

## DISCUSSION

Treatment decisions that are made by mental health staff in a secure housing environment such as the SCC are given great deference by the Court. Mental health treatment decisions are presumed valid; plaintiff must show a substantial departure from accepted professional judgment, practice, or standards in order to state a claim based on a specific action taken in relation to treatment. Romero v. Youngblood, 457 U.S. 307, 323 (1982).

Plaintiff has failed to come forward with any evidence to show that the defendants' decision to place him in a more secure unit is a substantial departure from normal accepted professional judgment. Plaintiff was held responsible for his conduct and that resulted in a placement change and change in conditions of confinement.

While plaintiff depicts defendants' action as punishment in his earlier filings, (ECF No. 4, page 3), he failed to come forward with any evidence to refute defendants' contentions.

Additionally, although another resident in the unit smeared feces in his own room it does not make the named defendants liable to plaintiff. According to defendants, the other resident was given two hours to clean his room and when he failed to do so SCC staff took action and removed the resident and cleaned the area (ECF NO. 23, Declaration of Cathi D. Harris ¶ 9). Defendants cannot be held liable for the acts of other persons. A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of a supervisory responsibility or position. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 n.58 (1978). Thus, the theory of *respondeat superior* is not sufficient to state a claim under § 1983. Padway v. Palches, 665 F.2d 965, 968 (9th Cir. 1982).

Personal participation is connected to causation. The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts and omissions are alleged to have caused a constitutional violation. Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

Plaintiff must allege facts showing how defendant caused or personally participated in causing the harm alleged in the complaint. Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981). A § 1983 suit cannot be based on vicarious liability alone, but must allege that the defendant's own conduct violated the plaintiff's civil rights. City of Canton v. Harris, 489 U.S. 378, 385-90 (1989).

1   Defendants also argue that they are entitled to dismiss based on Eleventh
2   Amendment immunity in their official capacity and qualified immunity. Because the
3   actions taken were the result of the exercise of professional judgment they were
4   constitutional. Further, the defendants are not liable for the actions of other residents. The
5   Court does not reach the issue of immunity.

6   Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have
7   fourteen (14) days from service of this Report to file written objections.  See also Fed. R.
8   Civ. P. 6.  Failure to file objections will result in a waiver of those objections for
9   purposes of de novo review by the district judge.  See 28 U.S.C. § 636(b)(1)(C).
10  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to
11  set the matter for consideration on April 6, 2012, as noted in the caption.

12  Dated this 14th day of March, 2012.

/s/ J. Richard Creatura

J. Richard Creatura
United States Magistrate Judge